IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

| | |
|---|---|
| VPR INTERNATIONALE, | CASE NO. 2:11-cv-2068 |
| Plaintiff, | Judge: |
| | Magistrate Judge: |
| v. | |
| DOES 1 – 1017, | |
| Individually, and as Representatives of a class | **JURY TRIAL DEMANDED** |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiff VPR Internationale, through its undersigned counsel, hereby files this Class Action Complaint requesting defendant class certification, damages, and injunctive relief, and alleges as follows:

## NATURE OF THE CASE

1. Plaintiff files this action for copyright infringement under the United States Copyright Act and a related civil conspiracy claim under the common law to combat the willful and intentional infringement of its creative works. Defendants, whose names Plaintiff expects to ascertain during discovery, illegally reproduced and distributed Plaintiff's copyrighted Video by acting in concert via the BitTorrent file sharing protocol and, upon information and belief, continue to do the same. Plaintiff seeks a permanent injunction, statutory or actual damages, an award of costs and attorneys' fees, and other relief.

1

**THE PARTIES**

2. Plaintiff VPR Internationale ("VPR") is a Montréal, Québec-based producer of adult entertainment content. Plaintiff is the exclusive owner of the copyrights at issue in this Complaint.

3. Plaintiff invests substantial capital in producing the content that is being brazenly distributed over the Internet by Defendants and others via the BitTorrent file transfer protocol in complete violation of Plaintiff's copyrights. The copyrighted works at issue here are some of these adult videos.

4. Defendants' actual names are unknown to Plaintiff. Instead, each Defendant is known to Plaintiff only by an Internet Protocol address (hereinafter "IP address"), which is a number that is assigned to devices, such as computers, that are connected to the Internet. In the course of monitoring Internet-based infringement of its copyrighted content, Plaintiff's agents observed unlawful BitTorrent protocol-based reproduction and distribution occurring over the IP addresses listed on Exhibit A attached hereto. Plaintiff believes that the Defendants' true identities will be revealed in discovery, at which time Plaintiff will seek leave of the Court to amend this Complaint to identify Defendants and name class representatives. Further, Plaintiff believes that the information gathered in discovery will allow Plaintiff to identify additional Defendants as members of the class, as infringement monitoring is ongoing.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction over the copyright infringement claim under 17 U.S.C. §§ 101, *et seq.*, (the Copyright Act), 28 U.S.C. § 1331 (actions arising under the laws of the United States), and 28 U.S.C. § 1338(a) (actions arising under an Act of Congress relating to copyrights). This Court has supplemental jurisdiction over the civil conspiracy claim under 28 U.S.C. § 1367(a) because it is so related to Plaintiff's copyright infringement claim,

which is within this Court's original jurisdiction, that the two claims form part of the same case and controversy under Article III of the United States Constitution.

6. This Court has personal jurisdiction over the Class because the putative named class representative Defendants are residents of Illinois. This Court has *in personam* jurisdiction over absent class members because due process is satisfied by providing them with best practicable notice, an opportunity to opt-out, and adequate representation. This Court also has personal jurisdiction over non-resident Defendants under the Illinois long-arm statute, 735 ILCS 5/2-209(a)(2), because they downloaded copyrighted content from or uploaded it to Illinois residents, thus committing a tortious act within the meaning of the statute, and because they participated in a civil conspiracy to commit copyright infringement with Illinois residents.

7. Venue is properly founded in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because Defendants reside in this District, may be found in this District, or a substantial part of the events giving rise to the claims in this action occurred within this District. Pursuant to CDIL-LR 40.1(F), Plaintiff's basis for filing in the Urbana Division is that Plaintiff used geolocation technology to trace the IP addresses of multiple Defendants to a point of origin within Champaign, Illinois.

## BACKGROUND

8. BitTorrent is a modern file sharing method ("protocol") used for distributing data via the Internet.

9. Traditional file transfer protocols involve a central server, which distributes data directly to individual users. This method is inefficient: when large numbers of users request data from the central server, the server can become overburdened and the rate of data transmission can slow considerably or cease altogether. In addition, the reliability of access to the data stored

on a server is largely dependent on the server's ability to continue functioning for prolonged periods of time under high resource demands.

10. In contrast, the BitTorrent protocol is a decentralized method of distributing data. Instead of relying on a central server to distribute data directly to individual users, the BitTorrent protocol allows individual users to distribute data directly to one another. Under the BitTorrent protocol, every user simultaneously receives information from and transfers information to one another.

11. In BitTorrent vernacular, individual downloaders/distributors of a particular file are called peers. The group of peers involved in downloading/distributing a particular file is called a swarm. A server which stores a list of peers in a swarm is called a tracker. A computer program that implements the BitTorrent protocol is called a BitTorrent client. Each swarm is unique to a particular file.

12. The BitTorrent protocol operates as follows. First, a user locates a small "torrent" file. This file contains information about the files to be shared and about the tracker, the computer that coordinates the file distribution. Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect to the tracker listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm. When the download is complete, the BitTorrent client continues distributing data to other peers in the swarm until the user manually disconnects from the swarm or the BitTorrent client otherwise does the same.

13. The degree of anonymity provided by the BitTorrent protocol is extremely low. Because the protocol is based on peers connecting to one another, a peer must broadcast

identifying information (i.e. an IP address) before it can receive data. Nevertheless, the actual names of peers in a swarm are unknown, as the users are allowed to download and distribute under the cover of their IP addresses.

14.     The BitTorrent protocol is an extremely popular method for transferring data. The size of swarms for popular files can reach into the tens of thousands of unique peers. A swarm will commonly have peers from many, if not every, state in the United States and several countries around the world.

15.     The BitTorrent protocol is also an extremely popular method for unlawfully copying, reproducing, and distributing files in violation of the copyright laws of the United States. A broad range of copyrighted albums, audiovisual files, photographs, software, and other forms of media are available for illegal reproduction and distribution via the BitTorrent protocol.

16.     Efforts at combating BitTorrent-based copyright infringement have been stymied by BitTorrent's decentralized nature. Because there are no central servers to enjoin from unlawfully distributing copyrighted content, there is no primary target on which to focus anti-piracy efforts. Indeed, the same decentralization that makes the BitTorrent protocol an extremely robust and efficient means of transferring enormous quantities of data also acts to insulate it from anti-piracy measures.

**ALLEGATIONS COMMON TO ALL COUNTS**

17.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

18.     At all times relevant hereto, Plaintiff has been the producer and owner of the works at issue in this action.

19.     Plaintiff is the owner of all rights, title, and interest in the copyright at issue.

20.     Each of the creative works at issue in this action has an application for registration pending in the United States Copyright Office.

21.     Plaintiff's works are available only via digital download at Plaintiff's online storefront, which contains a copyright notice and a statement that age verification records for all individuals are maintained in accordance with 18 U.S.C. § 2257.  In addition, torrent files used to access the copyrighted material were named in a manner that a simple Internet query of the torrent name would reveal Plaintiff as the producer of the content.

22.     Plaintiff employs proprietary peer-to-peer network forensic software to perform exhaustive real time monitoring of BitTorrent-based swarms involved in distributing the copyrighted creative works relevant to Plaintiff's action.  This software is effective in capturing data about the activity of peers in a swarm and their infringing conduct.

23.     Defendants, without Plaintiff's authorization or license, intentionally downloaded torrent files, purposefully loaded the torrent files into BitTorrent clients, entered a BitTorrent swarm particular to Plaintiff's copyrighted creative works, and reproduced and distributed the same to numerous third parties.  A log of IP address identifying each Defendant, as well as the corresponding torrent file swarm/copyrighted work in which Defendant was participating, and the date and time of Defendant's activity is attached as Exhibit A.

## COUNT I – COPYRIGHT INFRINGEMENT

24.     Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth fully herein.

25.     Defendants' conduct infringes upon Plaintiff's exclusive rights of reproduction and distribution that are protected under the Copyright Act.

26.     Each Defendant knew or had constructive knowledge that their acts constituted copyright infringement.

27. Defendants' conduct was willful within the meaning of the Copyright Act: intentional, and with indifference to the Plaintiff's rights.

28. Plaintiff has been damaged by Defendants' conduct, continues to be damaged by such conduct, and has no adequate remedy at law to compensate the Plaintiff for all of the possible damages stemming from the Defendants' conduct.

29. Plaintiff hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.

30. As Defendants' infringement was intentional and willful, the Plaintiff is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

### COUNT II – CIVIL CONSPIRACY

31. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

32. In using the peer-to-peer BitTorrent file distribution method, each Defendant engaged in a concerted action with other Defendants and yet unnamed individuals to reproduce and distribute Plaintiff's Video by exchanging pieces of the Video file in the torrent swarm.

33. Each of the Defendants downloaded a torrent file, opened it using a BitTorrent client, and then entered a torrent swarm comprised of other individuals distributing and reproducing Plaintiff's Video.

34. Participants in the torrent swarm have conspired to provide other individuals with pieces of the Video in exchange for receiving other pieces of the same Video to eventually obtain a complete copy of the file.

35. In furtherance of this civil conspiracy, Defendants committed overt tortious and unlawful acts by using BitTorrent software to download the Video from and distribute it to others, and were willful participants in this joint activity.

36. As a proximate result of this conspiracy, Plaintiff has been damaged, as is more fully alleged above.

## CLASS ACTION ALLEGATIONS

37. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

38. Plaintiff brings all claims herein as class claims pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a) and (b)(3) are met with respect to the class defined below:

**Class Definitions:**

39. The Class consists of: "All persons, except those with whom settlement has been reached, engaged in distribution activity via the BitTorrent file sharing protocol during the relevant time period (December 10, 2010, until the date the Court enters an order certifying a defendant class) of Plaintiff's copyrighted works associated with the torrent files enumerated in Exhibit A."

40. (Alternative) Illinois-only sub-class: "All persons residing in Illinois, except those with whom settlement has been reached, engaged in distribution activity via the BitTorrent file sharing protocol during the relevant time period (December 10, 2010, until the date the Court enters an order certifying a defendant class) of Plaintiff's copyrighted works enumerated in Exhibit A."

41. **Numerosity**. Plaintiff does not know the exact number of members of the Class because Defendants are operating under the cover of anonymous IP addresses and infringement activity is ongoing. Due to the nature of the underlying technology involved, however, Plaintiff believes that the Class members number at least in the thousands and are sufficiently numerous

and geographically dispersed throughout the United States so that joinder of all Class members is impracticable.

42. **Commonality**. There are numerous questions of law and fact common to the Class, including but not limited to:

(A) Whether the Plaintiff is the owner of the copyrighted works at issue;

(B) Whether "copying" has occurred within the meaning of the Copyright Act;

(C) Whether entering a torrent swarm constitutes a willful act of infringement; and

(D) Whether and to what extent Plaintiff has been damaged by the Defendant's conduct.

43. **Typicality**. Every Defendant engaged in the same conduct: copying and distributing the Plaintiff's owned and copyrighted work. Although some defenses of noninfringement may be more tailored to an individual, typical defenses common to all and certain to be vigorously asserted by the named Defendants include First Amendment rights to anonymous communication and rights to privacy.

44. **Adequacy of Representation**. In the course of this litigation, the Plaintiff or this Court will select appropriate Class representatives who will fairly and adequately protect the interests of the Class. The Class representatives will be represented by counsel competent and experienced in the defense of copyright and class action litigation. The identities of Class members can be determined through appropriate discovery. If no Defendant volunteers to be a Class representative, further discovery regarding ability to represent the Class can be conducted with the permission of this Court.

45. **Common questions of law or fact predominate and class action is superior method**. This action satisfies the prerequisites of Fed. R. Civ. P. 23(b)(3). The common questions of law and fact enumerated above predominate over questions affecting only individual

members of the Class. A class action is the superior method for fair and efficient adjudication of the controversy because:

(A) The interests of members of the class in individually controlling the defense of separate actions are slight when compared to the many benefits of adjudication of the common questions in a class action. For example, many defendants will benefit from the pooling of expenses that the class action permits by acquiring better representation through class counsel than they otherwise would be able to afford. In addition, prosecuting separate suits would place great burden upon the Plaintiff and the Court's calendar.

(B) The Plaintiff has not filed other lawsuits against the members of this Class; thus, no other litigation would be delayed or made more burdensome if a class action is maintained.

(C) Infringing activity occurred in every jurisdiction in the United States, including this one; and the Central District of Illinois is a proper forum in which to bring these claims.

(D) Finally, the difficulties likely to be to be encountered in the management of a class action are not significant when weighed against the benefits to the class and to the administration of justice.

## JURY DEMAND

46.   Plaintiff hereby demands a jury trial in this case.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests Judgment and relief as follows:

1)   An Order from this Court certifying this action as a class action pursuant to the Federal Rules of Civil Procedure;

2) Judgment against all Defendants that they have: a) willfully infringed Plaintiff's rights in federally registered copyrights pursuant to 17 U.S.C. § 501; and b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

3) Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of Plaintiff, in an amount to be ascertained at trial;

4) Order of impoundment under 17 U.S.C. §§ 503 & 509(a) impounding all infringing copies of Plaintiff's audiovisual works, photographs or other materials, which are in Defendants' possession or under their control;

5) On Count II, an order that Defendants are jointly and severally liable to the Plaintiff in the full amount of the Judgment on the basis of a common law claim for civil conspiracy to commit copyright infringement; for an award of compensatory damages in favor of the Plaintiff and against Defendants, jointly and severally, in an amount to be determined at trial;

6) Judgment in favor of Plaintiff against the Defendants awarding the Plaintiff attorneys' fees, litigation expenses (including fees and costs of expert witnesses), and other costs of this action; and

7) Judgment in favor of the Plaintiff against the Defendant, awarding Plaintiff declaratory and injunctive or other equitable relief as may be just and warranted under the circumstances.

Respectfully submitted,

VPR Internationale

DATED: March 8, 2011

By: /s/John Steele  
One of its Attorneys

Jon Rosenstengel # 06216770  
Bonifield & Rosenstengel PC.  
16 E. Main St.  
Belleville, IL 62220  
618-277-7740; Fax 618-277-5155  
jonrose@icss.net

Jerald J. Bonifield # 00251194  
Bonifield & Rosenstengel PC.  
16 E. Main St.  
Belleville, IL 62220  
618-277-7740; Fax 618-277-5155  
jerryb1066@yahoo.com

John Steele # 6292158  
Steele Hansmeier PLLC  
161 N. Clark St.  
Suite 4700  
Chicago, IL 60601  
312-880-9160; Fax 312-893-5677  
jlsteele@wefightpiracy.com  
*Lead Counsel*

**Attorneys for Plaintiff**