IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, URBANA DIVISION

| | |
|---|---|
| VPR INTERNATIONALE, | CASE NO. 2:11-cv-2068-HAB-DGB |
| Plaintiff, | Judge: Harold A. Baker |
| v. | Magistrate Judge: David G. Bernthal |
| DOES 1 – 1017, | |
| Individually, and as Representatives of a class | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE ORDER DENYING EXPEDITED DISCOVERY**

Plaintiff VPR Internationale respectfully asks this Court to reconsider its Order denying VPR's motion for expedited discovery. This suit and this method of discovery are VPR's only means of unmasking the individuals who have infringed on its copyrights and caused economic harm. The manner in which this injury occurred may only involve virtual bits and bytes of data, but that does not make the harm any less tangible. The manner in which VPR is pursuing enforcement of its copyrights has deep roots in American and English common law jurisprudence.

Traditional adversarial procedure is not possible in this initial stage of the case because VPR cannot sue the ISPs directly and cannot name anonymous Defendants without first discovering their identities. But if the Court grants VPR's motion, the Defendants will still be given notice and an opportunity to be heard. Further, the controlling case law in this jurisdiction directs this Court to grant VPR's discovery motion because the requested discovery is necessary for class certification and to ascertain the identities of unknown Defendants. Therefore, VPR calls for Court's aid in unmasking the infringers and vindicating its rights.

1

## I. VPR CANNOT INITIATE AN ADVERSARIAL PROCESS BY NAMING ISPs IN THIS SUIT, AND SHORT DATA RETENTION POLICIES THREATEN IMMINENT EVIDENCE DESTRUCTION

The Court in its Order denying VPR's motion for expedited discovery noted that "there are existing, identified entities who could be named as defendants that have control over or know the identity of a particular internet service address customer." (Order on Mot. for Expedited Discovery, para. 3, Mar. 9, 2011.) [hereinafter "Order"]  The Court also concluded that it has "no basis to believe that information will be lost or evidence destroyed that would justify expedited discovery that is not conducted in an adversarial procedure." (*Id.* at para. 2.)  Assuming that the Court refers to the Internet Service Providers (ISPs) as the "identified entities who could be named as defendants," VPR cannot initiate an adversarial proceeding in this manner.  In addition, due to short data retention policies by the ISPs, the threat of data destruction is immediate.

### A.    VPR's Only Means of Obtaining Relief is Through Issuance of Rule 45 Subpoenas

VPR has no other means to discern the identity of people infringing its copyrights except to serve Rule 45[1] subpoenas on the Internet Service Providers (ISPs) because the ISPs cannot be sued directly.  First, ISPs have not committed any infringement.  Second, ISPs are generally immune from monetary liability, and injunctive and equitable relief is further limited. Third, this is a class action case, and ISPs are not members of the proposed class.

First, VPR's complaint is for copyright infringement and civil conspiracy.  (*See* Compl.) The ISPs have committed neither, and VPR does not have a cause of action against them.

Second, ISPs are generally immune from liability.  Over a decade ago, in response to the increased availability of illegal file-sharing methods on the web and the unprecedented legal issues associated with the litigation begotten by such methods, Congress enacted the Digital

---

[1] All mentions of the Rules refer to the Federal Rules of Civil Procedure.

Millennium Copyright Act (DMCA), Pub. L. No. 105-304, 112 Stat. 2860 (1998) (codified as amended in scattered sections of 17 and 28 U.S.C.).  Title II of the DMCA, the Online Copyright Infringement Liability Limitation Act, addresses the liability of ISPs for copyright infringement. 112 Stat. 2877 (codified as amended at 17 U.S.C. § 512 (2000)).  By acting in accordance with certain prerequisites, an ISP will avoid liability for monetary damages for various copyright infringement claims.  *Id.*  ISP compliance with the Act further limits equitable and injunctive relief.  *Id.* § 512(j).  VPR cannot in good faith argue that ISPs are liable for the unlawful acts of their subscribers in the face of existing laws abridging the ISPs' liability.

Third, this is a class action case where the proposed class members are copyright infringers who engaged in a civil conspiracy by acting in concert when sharing files.  (Compl. ¶¶ 31–36, 39, 40.)  The ISPs have not committed copyright infringement, have not engaged in a civil conspiracy, do not share common questions of law or fact with the Defendants, and their interests neither coincide with nor would be adequately represented by the class representatives.

For these reasons, VPR simply cannot name the ISPs in this suit to initiate the adversarial process.  Instead, it must rely on Rule 45 subpoenas directed to the ISPs to discover the identities of Defendants, who then will be properly named in this suit.  VPR has no other means of obtaining this information.

**B.     VPR is Under Imminent Threat of Evidence Destruction**

Not only is VPR unable to initiate the adversarial process by naming the ISPs in this suit, but it has every reason to believe that the necessary evidence necessary is being destroyed even as VPR asks for the Court's reconsideration.  The Internet Protocol (IP) addresses by which the Defendants are identified in this suit are not fixed indefinitely.  They are akin to records of *who* rented *which* car at a busy car rental agency.  IP addresses are like cars "leased" by subscribers. If a plaintiff was injured by a rental car, the plaintiff can discover the information on who leased

the car from the agency by specifying the license plate of the offending vehicle and the date and time when the injury occurred. Without access to the agency's records, all the plaintiff has is the identity of the rental agency, but not who was driving the rental car.

     As with rental car license plates, VPR can trace the IP addresses to who "owns" them—ISPs like Charter Communications, Time Warner, Cox, etc.—but it does not have a way of identifying the "driver," the subscriber who caused the injury. VPR knows exactly when the injury occurred, and has assembled that information in Exhibit A attached to the Complaint. VPR needs to learn who was using the IP address in question on the date and time specified in the Exhibit, not who is using it now. And unlike car rental agencies, ISPs do not maintain their records for very long, but instead destroy them quickly, usually in the matter of weeks or months.[2] Because it takes time to assemble the information on infringing IP addresses, to bring a lawsuit, and then to wait for ISPs to process subpoena requests, with every passing day the information on who was using the IP at the time of the injury is in danger of destruction.

     In conclusion, VPR cannot initiate the adversarial process by suing the ISPs directly and the evidence it needs to pursue its claims is being destroyed daily. In addition, it is not clear

---

[2] No national standard on data retention by ISPs exists, although it is being contemplated by the Congress. *Data Retention as a Tool for Investigating Internet Child Pornography And Other Internet Crimes: Hearing Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary*, 112th Cong. 5 (Jan. 25, 2011) [hereinafter *Hearings*] (statement of Lamar Smith, Chairman, H. Comm. on the Judiciary), *available at* http://judiciary.house.gov/hearings/ printers/112th/112-3_63873.PDF (last visited Mar. 10, 2011). ISPs have varying data retention policies for IP addresses. For example, Time Warner and Cox will erase their records after 6 months, Earthlink after 4 months, and many smaller ISPs in days or weeks. *See Hearings*, supra, at 65 (statement of Wasserman Schultz, Member, H. Subcom. on Crime, Terrorism, and Homeland Security); Time Warner Subpoena Instructions, http://www.timewarnercable.com/ corporate/subpoenacompliance.html; Earthlink Civil Subpoena Policy, http://www.earthlink.net/about/ policies/civil.faces; Notice to Parties Serving Subpoenas on Cox Communications, http://www.cox.com/policy/leainformation/ LEAInformation_print.pdf (all three last visited Mar. 10, 2011).

4

whether ISPs would have standing to assert claims of privilege on behalf of the Defendants, but if the Court grants VPR's motion, the Defendants can certainly assert those claims themselves.

## II. DEFENDANTS CAN ASSERT CLAIMS OF PRIVILEGE AS THIRD PARTIES

The Court raised concerns over Defendants' ability to assert claims of privilege or protection. (Order, para. 3.) But even before being named, Defendants will still be afforded an opportunity to raise claims of privilege or protection under Fed. R. Civ. P. 45(d)(2). This Court, like other courts in the Seventh Circuit, has established that a third party has standing to quash a subpoena when the party claims some right or privilege with regard to the documents sought. *Gripper v. City of Springfield*, No. 04-3215, 2006 WL 1314152, at *2 (C.D. Ill. May 12, 2006) (citing 9A Wright & Miller, Federal Practice & Procedure § 2459 (2d ed. 1995)); *accord Orange v. Burge*, No. 04 C 168, 2006 WL 2567786, at *2 (N.D. Ill. Aug. 15, 2006); *United States v. Segal*, 276 F. Supp. 2d 896, 900 (N.D. Ill. 2003) (citing *United States v. Raineri*, 670 F.2d 702, 712 (7th Cir.1982)); *Kessel v. Cook County*, No. 00 C 3980, 2002 WL 398506, at *2 (N.D. Ill. Mar. 14, 2002).

Even though in this case the Defendants cannot be named until discovery is complete, they will still receive notice and be given an opportunity to be heard. The Defendants will be given notice of VPR's subpoenas by their ISPs which will allow them to appear in this case and move the Court to quash the subpoena just like other defendants in cases involving third party subpoenas. The Cable Communications Policy Act of 1984, Pub. L. 98-549, 98 Stat. 2794 (codified as amended at 47 U.S.C. § 551 (2001)), requires that when cable operators disclose subscriber information pursuant to a court order, they must notify each subscriber about whom disclosure is sought about the subpoena and pending disclosure. 47 U.S.C. § 551(c)(2)(B) (2001).

5

The Court in its Order also raised concerns about personal jurisdiction. As the Court concluded, "at this point the Court has no personal jurisdiction over anyone." (Order, para. 1.) But personal jurisdiction is not necessary to serve subpoena requests on the ISPs. The concepts underlying the two powers of the federal court— personal jurisdiction and the subpoena power— are fundamentally different. Personal jurisdiction refers to a court's power to bring a person into its adjudicative process. Black's Law Dictionary (9th ed. 2009). In the context of this case, personal jurisdiction is based on conduct that subjects the nonresident to the power of a court to adjudicate its rights and obligations in a legal dispute. *See International Shoe v. Washington*, 326 U.S. 310, 317 (1945). The subpoena power of a court over a nonparty to a lawsuit is based on the power and authority of the court to compel the production of documents by a person or entity.

Here, VPR asks this Court to exercise its subpoena power to compel production of records from ISPs. If any Defendant wishes to move this Court to quash the subpoena, they may do so at the appropriate time. After VPR receives the records, the Court may assert personal jurisdiction over the Defendants, who can then be named and served, and participate in the adversarial process. But discovering the identities of the Defendants through the exercise of the subpoena power is the first and necessary step in initiating this adversarial process.

### III. THE COURT SHOULD ISSUE A LIMITED "FISHING LICENSE" TO DISCOVER DEFENDANTS' IDENTITIES

The Court also raised a concern that VPR's discovery motion is a "fishing expedition." (Order, para. 4.) The Supreme Court has explored this subject and concluded that "[n]o longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). The Seventh Circuit applying *Hickman* in a class action discovery context concluded that even when

6

confronted with discovery abuse, the district court must still issue a limited "fishing license" so the issue of class determination can be explored. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A.*, 657 F.2d 890, 904 (7th Cir. 1981). As laid out below, this case is just one of many in a line of cases reversing district courts for failure to allow class certification discovery. The other line of cases from the Seventh Circuit reverses district courts for failure to allow discovery of unknown defendants. In this action, the lines converge because this is a class action where identities of those who will serve as named Defendants are not yet known, but are discoverable with aid of the Court. This convergence might make the case unique, but it also makes discovery more, not less, appropriate.

**A.     It Is Improper for the Court to Deny Discovery Necessary for Class Certification**

The controlling law in this Circuit calls for the Court to grant VPR's motion for discovery because it is necessary for class certification. In *Eggleston*, the discovery at issue involved thousands of intrusive questions asked in interrogatories and during the depositions, and obstructionist tactics employed by the other side. *Id.* at 893–94, 896–902. The trial judge dismissed plaintiff's claims with prejudice for their "evasive and thwarting conduct." *Id.* at 902. The Seventh Circuit, although sympathizing with the judge having to endure this "vexatious" case, nonetheless held that it was "an abuse of discretion to have tried to cure abuse on both sides by denying plaintiffs all opportunity for relief" and reversed. *Id.* at 904. Although courts enjoy broad discretion in controlling discovery, *Eggleston* expressly acknowledged that courts must allow a degree of pre-certification discovery "to aid making the necessary class determinations." *Id.* at 895.

Other Circuits similarly have held it is an abuse of discretion to deny discovery necessary to determine the propriety of a class action. For example, the Fifth Circuit reversed the trial

court where the plaintiff "was not given an adequate opportunity to conduct meaningful discovery before the class certification hearing." *Duke v. University of Texas at El Paso*, 729 F.2d 994, 996 (5th Cir. 1984). The Fifth Circuit held that the "failure to allow the requested discovery was an abuse of discretion." *Id.* at 997. The court emphasized that "the Judge's discovery rulings, like his other procedural determinations, are not entirely sacrosanct. If he fails to adhere to the liberal spirit of the Rules, we must reverse." *Id.* (citing *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300, 304–305 (5th Cir.1973)). The Ninth Circuit also agrees that in a situation in which the propriety of a class action cannot be determined without discovery, it is an abuse of discretion to deny discovery. *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1312 (9th Cir. 1977); *Kamm v. California City Development Co.*, 509 F.2d 205, 210 (9th Cir. 1975).

District courts within Seventh Circuit follow the established precedent and routinely allow discovery in class actions cases directed at discovery of potential class members and their contact information. *Acevedo v. Ace Coffee Bar, Inc.*, 248 F.R.D. 550, 554 (N.D. Ill. 2008); *Tomanovich v. Glen*, No. IP 01-1247 C Y/K, 2002 WL 1858795, at *4 (S.D. Ind. Aug. 13, 2002); *Bobkoski v. Board of Educ. of Cary Consol. School Dist. 26*, No. 90 C 5737, 1992 WL 233965, at *4 (N.D. Ill. Sept. 11, 1992). Courts distinguish basic contact information from "more intimate privacy interests such as compelled disclosure of medical records and personal histories." *Acevedo*, 248 F.R.D. at 554 (quoting *Wiegele v. FedEx Ground Package System*, 2007 WL 628041, at *2 (S.D. Cal. 2007)).

VPR made a limited discovery request that does not involve any information "intimate" in nature. Instead of embarking on an *Eggleston*-style "fishing expedition," VPR's motion merely asks for basic contact information so it can the develop evidence necessary for a class

certification motion. This information is necessary because VPR expects to identify a group of Illinois infringers who will be named defendants in this case and some of whom will eventually serve as class representatives, and because the Plaintiff will need it to direct notice to the class.

Like the *Eggleston* court, this Court has effectively denied VPR all opportunity for relief, because without Rule 45 subpoenas VPR has no other means of gathering evidence necessary for class certification. VPR respectfully requests that the Court reconsiders.

**B.    It is Improper for the Court to Deny Discovery of Defendants' Identities**

The Seventh Circuit Court of Appeals also does not hesitate to reverse and remand cases for failures to assist plaintiffs in the discovery of defendant's true identities. *See, e.g.*, *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980) (approving of fictitious name pleadings until such time as the identity of the plaintiffs "can be learned through discovery or through the aid of the trial court"). The trial court judge in *Maclin* dismissed Doe defendants, even though their identities could have been easily ascertained. *Id.* Seventh Circuit reversed, holding that "when, as here, a party is ignorant of defendants' true identity . . . plaintiff should have been permitted to obtain their identity through limited discovery." *Id.* (citing *Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979); *Gordon v. Leeke*, 574 F.2d 1147, 1152–53 (4th Cir. 1978)).

*Maclin* is only one of many in the line of Seventh Circuit decisions holding that "[t]o the extent the plaintiff faces barriers to determining the identities of the unnamed defendants, the court must assist the plaintiff in conducting the necessary investigation." *Donald v. Cook County Sheriff's Dept.*, 95 F.3d 548, 555 (7th Cir. 1996); *see also id.* at 555 n.3 (collecting cases). Other Circuits follow suit. *See, e.g.*, *Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (error to dismiss unnamed defendants given possibility that identity could be ascertained through discovery) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) ("[W]here the identity

9

of the alleged defendants [is] not [ ] known prior to the filing of a complaint . . . the plaintiff should be given an opportunity through discovery to identify the unknown defendants.")); *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) (holding that the district court erred when it denied the plaintiff's motion to join John Doe Defendants where the identity of John Doe could have been determined through discovery).

VPR can determine the identity of Doe Defendants through the discovery process. Once the names of anonymous Defendants are divulged, proper service will be made pursuant to Rule 4. The Court emphasized the need for an adversarial procedure in its Order; the first step in initiating that process is for the Court to aid VPR in discovering the Defendants' identities.

In conclusion, this action represents the convergence of the two lines of cases: those where discovery is necessary to determine propriety of a class action and those where it is necessary to discover identities of unknown defendants. This makes VPR's discovery request more, not less, appropriate.

## IV.   VPR'S ACTION IS CONSISTENT WITH THE PURPOSE AND INTENT OF RULE 23

The Court is also concerned that VPR seeks discovery "by means of a perversion of the purpose and intent of Fed. R. Civ. P. 23." (Order, para. 4.) The drafters of Rule 23 intended the rule to enable those with small claims to achieve relief even if their individual claims are too small to be viable. Another purpose of Rule 23 is to "achieve economies of time, effort, and expense and promote uniformity of decision as to persons similarly situated." Fed. R. Civ. P. 23(b)(3) Advisory Committee Notes (1966). From its inception, the Rule allowed for the creation of defendant classes thus adopting contemporaneous common law. Fed. R. Civ. P. 23(a) Advisory Committee Notes (1937) (discussing "actions brought by *or against* representatives") (emphasis added). This common law tradition of defendant class actions has remarkably deep

history dating back to 12th century England—the first published case is from 1199. *Martin, Rector of Barkway v. Parishioners of Nuthamstead*, *in* Select Cases From the Ecclesiastical Courts of the Province of Canterbury, c. 1200–1301 (Norma Adams & Charles Donahue, Jr. eds., 1981); *see also* Stephen C. Yeazell, *The Past and Future of Defendant and Settlement Classes in Collective Litigation*, 39 Ariz. L. Rev. 687, 687–90 (Summer 1997) (discussing history and origins of defendant class actions). To be sure, suits against defendant classes are "rare birds," as Judge Posner has called them. *Cigna Healthcare of St. Louis, Inc., v. Kaiser*, 294 F.3d 849, 853 (7th Cir. 2002). Still, the courts in this Circuit have certified defendant classes and allowed the suits to proceed in cases involving infringement of intellectual property rights. *Research Group v. Pfister Associated Growers, Inc.*, 301 F. Supp. 497 (N.D. Ill. 1969) (certifying a defendant class in a patent infringement action), *appeal dismissed sub nom. Research Corp. v. Asgrow Seed Co.*, 425 F.2d 1059 (7th Cir. 1970); *Technograph Printed Circuits, Ltd. v. Methode Electronics, Inc.*, 285 F. Supp. 714 (N.D. Ill. 1968) (same);[3] *see also Thillens, Inc. v. Community Currency Exchange Ass'n of Illinois, Inc.*, 97 F.R.D. 668 (N.D. Ill. 1983) (certifying a defendant class in an antitrust case).

Although rarely seen, under the circumstances of this case, a suit against the defendant class is not only procedurally proper, but consistent with the purpose and intent of Rule 23. Defendants infringed on VPR's intellectual property rights. (Compl. ¶ 25.) Each of VPR's claims against each individual defendant may be too small to be economically viable, but with a

---

[3] These court decisions order "that the above-styled actions be maintained as class actions under Rule 23." Under the version of Rule 23 in effect at the time, subdivision (c)(1) provided: "As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained." Fed. R. Civ. P. 23(c)(1) (1966). That language was eventually replaced by the modern version where "the court must determine by order whether to certify the action as a class action." *Id.* (2011). The effect of both orders is the same.

Rule 23 class action, VPR can "achieve economies of time, effort, and expense" and vindicate its rights.  But the Defendants benefit as well: whereas individual Defendants may lack financial resources or incentive to litigate the meritorious defenses (if any), in a class action, the resources are pooled, and even absentee Defendants gain representation.  More than one commentator agrees that the defendant classes in online infringement cases are a procedural benefit to defendants.  Jonathan Reich, *The Class Defense: Why Dispersed Intellectual Property Defendants Need Procedural Protections*, 9 Duke Law & Technology Review (2010); Assaf Hamdani & Alon Klement, *The Class Defense*, 93 Cal. L. Rev. 685, 689–90 (2005).

      Far from employing a novel approach, VPR is relying on a common law tradition of suits against a defendant class embodied by the drafters in Rule 23 that has deep roots going back to primeval mists.  But the Court only has to look back a few decades to find that VPR's case is similar in nature to actions enforcing intellectual property rights in *Pfister* and *Technograph*, where a district court in this Circuit certified the defendant classes.  *Pfister*, 301 F. Supp. at 504; *Technograph*, 285 F. Supp. at 725.  Rather than asking this Court to turn Rule 23 on its head, VPR respectfully requests this Court to follow common law traditions and well-established precedent from this Circuit.

[intentionally left blank]

## CONCLUSION

Adversarial proceeding is not possible at this early stage in the litigation under the circumstances of this case. It is not possible for VPR to directly sue entities "that have control over or know the identity of a particular internet service address customer." VPR has no other means of ascertaining Defendants' identities other than directing Rule 45 subpoenas to the ISPs, and Defendants will still be given notice and opportunity to be heard and raise "questions or claims of privilege or protection." VPR's discovery motion is a first step in initiating the adversarial litigation process, necessary for both class certification and ascertaining identities of the Defendants so proper service can be made. VPR calls for Court's aid in discovering the Defendants' identities and respectfully asks the Court to reconsider its Order, grant VPR's motion for expedited discovery, and enter an Order substantially in the form of the Proposed Order submitted with the discovery motion.

Respectfully submitted,

VPR Internationale

DATED: March 11, 2011

By:   s/ John Steele
      One of its Attorneys

Jon Rosenstengel # 06216770
Bonifield & Rosenstengel PC
16 E. Main St.
Belleville, IL 62220
618-277-7740; Fax 618-277-5155
jonrose@icss.net

Jerald J. Bonifield # 00251194
Bonifield & Rosenstengel PC.
16 E. Main St.
Belleville, IL 62220
618-277-7740; Fax 618-277-5155
jerryb1066@yahoo.com

John Steele # 6292158
Steele Hansmeier PLLC
161 N. Clark St.
Suite 4700
Chicago, IL 60601
312-880-9160; Fax 312-893-5677
jlsteele@wefightpiracy.com
*Lead Counsel*

**Attorneys for Plaintiff**