E-FILED
Tuesday, 05 July, 2011  12:56:11 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| VPR INTERNATIONALE, | CASE NO. 2:11-cv-02068-HAB-DGB |
| Plaintiff, | Judge: Hon. Harold A. Baker |
| | Magistrate Judge: Hon. David G. Bernthal |
| v. | |
| DOES 1 – 1017, | |
| Individually, and as Representatives of a class, | |
| Defendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW
## REGARDING MAINTAINING THIS SUIT AS A CLASS ACTION

The Court directed Plaintiff VPR Internationale ("VPR") to submit additional briefing on the issue of maintaining this suit as a class action. VPR submits this memorandum of law as a preliminary discussion of class certification issues. In this suit, Plaintiff seeks resolution of common issues that it will later assert via collateral estoppel against class members in satellite actions.  VPR begins by refining its class definition to satisfy the implied requirement of definiteness. With respect to the other six requirements for class certification, numerosity is not in dispute, and typicality and adequacy cannot be addressed until a class representative is selected. This brief focuses on commonality, predominance, and superiority. Because all of these requirements are satisfied, VPR can properly seek class certification with respect to common issues.

### LEGAL STANDARD

In a motion for class certification, it is a plaintiff's burden to establish that the requirements of Fed. R. Civ. P. 23 have been met. *Blihovde v. St. Croix Cnty., Wis.*, 219 F.R.D. 607, 613 (W.D. Wis. 2003). However, before any discovery has been completed, and when class

1

certification is questioned on the basis of the allegations in the complaint only, "the proper standard is the same as a motion to dismiss for failure to state a claim." *Id.* at 214. In such a procedural setting, a plaintiff's allegations are insufficient only where no conceivable set of facts could be proven that would entitle the plaintiff to relief. *Power v. GMAC Mortg. Corp.*, No. 06-C-4983, 2007 WL 723509, at *5 (N.D. Ill. Mar. 7, 2007) (postponing the more nuanced question of whether the class claims were "ill-suited" to resolution as a class until the plaintiff files a "fully developed" motion for class certification).

This standard is not unlike that employed by district courts in screening complaints. *See, e.g.*, *Rowe v. Shake*, 196 F.3d 778, 783 (7th Cir. 1999) (noting that "district courts have the power to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of fee status" and proceeding to affirm lower court's dismissal of complaint for failure to state a claim). The Seventh Circuit has written approvingly of the authority of district judges to "dismiss *frivolous or transparently defective* suits spontaneously," while simultaneously warning that judges must "take care that initial impressions, and the lack of an adversarial presentation, not lead to precipitate action that backfires and increases the duration and cost of the case." *Hoskins v. Poelstra*, 320 F.3d 761, 763 (7th Cir. 2003) (emphasis added).

Although Rule 23 does not contain an express "definiteness" requirement, the Seventh Circuit considers it to be a prerequisite to class certification. *See Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006); *Alliance to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). A class definition satisfies this requirement when it contains "precise, objective criteria that would be within the personal knowledge of the potential class member." *G.M. Sign, Inc. v. Group C Commc'ns, Inc.*, No. 08-cv-4521, 2010 WL 744262, at *4 (N.D. Ill. Feb. 25, 2010).

2

Next, a party seeking certification must demonstrate that the proposed class meets all four requirements of Rule 23(a): (1) the class is so numerous that joinder of the class members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the class representatives are typical of the claims or defenses of the class as a whole ("typicality"); and (4) the representatives will fairly and adequately protect the class interests ("adequacy"). *See* Fed. R. Civ. P. 23(a)(1)–(4); *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 985 (7th Cir. 2002). If a proposed class meets the prerequisites of Rule 23(a), it must then be shown that the class satisfies at least one of the three requirements of Rule 23(b). *See Hispanics United of DuPage County v. Village of Addison, Ill.*, 160 F.R.D. 681, 686 (N.D. Ill. 1995); *Hardin v. Harshbarger*, 814 F. Supp. 703, 706 (N.D. Ill. 1993). In this case, VPR will be seeking certification under Rule 23(b)(3).

Rule 23(b)(3) permits a case to proceed as a class action when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). "This rule requires two findings: predominance of common questions over individual ones and superiority of the class action mechanism." *Murry v. America's Mortgage Banc, Inc.*, No. 03 C 5811, 03 C 6186, 2005 WL 1323364, at *9 (N.D. Ill. May 5, 2005). In evaluating the requirement of superiority, a court must consider: "(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular

3

forum; (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3); *see also Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

 If a proposed class satisfies the requirements of both subsections (a) and (b) of Rule 23, then class certification may be sought with respect to common issues: "When appropriate . . . an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4).

A court has broad discretion to determine whether a proposed class meets Rule 23's certification requirements. *In re General Motors Corp. Dex-Cool Products Liability Litigation*, 241 F.R.D. 305, 311 (S.D. Ill. 2007). In making this determination, Rule 23 should be construed liberally to support a policy of favoring the maintenance of class actions. *Id.* (citing *King v. Kansas City S. Indus., Inc.*, 519 F.2d 20, 25–26 (7th Cir. 1975)).

## ARGUMENT

VPR is not asking the Court to resolve in this suit all of the rights and liabilities of the proposed class members with respect to the allegations in VPR's complaint. Instead, VPR is asking this Court to resolve issues common to the class, which will allow VPR to assert the Court's determinations via collateral estoppel in satellite actions. This procedure not only satisfies the requirements of the Federal Rules, but also has been discussed approvingly by the Seventh Circuit.

In Part I, VPR refines its class definition to further satisfy the implied requirement of "definiteness." In Part II, VPR addresses Rule 23(a)'s requirement of commonality. In Part III, VPR demonstrates that Rule 23(b)(3)'s requirements of predominance and superiority are met: common issues predominate over individual issues, and a class action is the superior device to resolve VPR's claims. In Part IV, VPR demonstrates that class certification will not defeat the predominance and superiority requirements because this action is unlike any other case

4

previously decertified by the appellate court. VPR expects that the discovery process will reveal additional support for its arguments regarding class certification. For example, to properly move for class certification, VPR must be allowed to complete discovery to identify an individual to serve as an adequate class representative.

## I.    AN IDENTIFIABLE CLASS EXISTS

The implied requirement of "definiteness" is satisfied if membership in the class is ascertainable. This requirement does not require a plaintiff to identify specific class members. Other courts in this district have observed, "a class is sufficiently definite if its members can be ascertained by reference to objective criteria and may be defined by reference to defendant's conduct."[1] *Id.* (collecting cases).

VPR would refine its proposed class definition as follows:

39. The Class consists of: "All persons, except those with whom settlement has been reached, engaged in distribution activity via the BitTorrent file sharing protocol during the relevant time period (December 10, 2010, until February 26, 2011) of Plaintiff's copyrighted works associated with the torrent files enumerated in Exhibit A"

40. (Alternative) Illinois-only sub-class: "All persons residing in Illinois, except those with whom settlement has been reached, engaged in distribution activity via the BitTorrent file sharing protocol during the relevant time period (December 10, 2010, until February 26, 2011) of Plaintiff's copyrighted works enumerated in Exhibit A."

This refined class definition satisfies the definiteness requirement because class membership can be ascertained by first referencing objective Internet Protocol ("IP") addresses and then by referencing defendant's conduct, "distribution activity" (i.e., downloading or uploading), an activity that would be within the personal knowledge of each potential class member. The

---

[1] Although "defendant's conduct" in that context was a reference to a defendant opposing the class, it is equally applicable where a defendant is a member of the class, because the focus here is on the conduct—it is the party's own behavior that makes him a defendant and puts him on notice that he is a member of the class.

identity of each proposed class member does not need to be known in this proceeding because this suit will not resolve questions of liability or award damages. Account holders who are not the downloaders will be able to assert the defense that they are not members of this class in subsequent satellite actions.

## A.    Class Membership Can Be Ascertained by First Referencing the IP Addresses

Membership in VPR's proposed class can be ascertained by first referencing IP addresses—a method not dissimilar to defining classes by fax numbers, which other courts in this Circuit have held to satisfy the definiteness prerequisite.

In numerous decisions stemming from violations of the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, the Northern District of Illinois held that ascertaining class members by referencing fax numbers satisfies the definiteness requirement. *See, e.g.*, *Group C Commnc's, Inc.*, 2010 WL 744262, at *4; *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135, 141 (N.D. Ill. 2009); *Hinman v. M and M Rental Center, Inc.*, 545 F. Supp. 2d 802, 804 (N.D. Ill. 2008). Determining class membership in these cases was possible by referencing the defendant's logs, which detailed the fax numbers to which it sent junk faxes. These decisions are relevant to this case because VPR can ascertain class membership by referencing IP addresses, similar to the manner in which TCPA class membership was ascertained by referencing fax numbers.

Courts have held that fax numbers are precise and objective. For example, in *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135, 141 (N.D. Ill. 2009), defendants argued that the fax numbers on the logs were insufficient identifiers of the class because the numbers are not objective criteria. The court plainly disagreed: "That is simply not so. The fax numbers on the logs present enough information to enable class counsel to locate the class members. The fax

numbers are both precise and objective. Identification of the individuals or businesses who owned those numbers . . . will take some effort, but it is not impracticable." *Id.*

Courts have certified classes that relied on fax numbers to identify its members even when fax numbers were not incorporated or referenced in class definitions directly. For example, in *Hinman*, defendant M and M Rental Center offered goods and services related to corporate event planning. 545 F. Supp. 2d at 804. Plaintiffs alleged that M and M hired a company called Xpedite to broadcast one-page fax "flyers" to companies whose fax numbers were on a list of "leads" M and M had purchased several years earlier from a company called Corporate Marketing. *Id.* Plaintiffs each received at least one of these fax "flyers," which they allege violate the TCPA. *Id.* The court certified the following class:

> All persons who, on or after four years prior to the filing of this action, were sent, without permission, telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of defendant.

*Id.* at 808. The court reasoned that class members can be identified with reference to the lists generated by Corporate Marketing, M and M, or Xpedite, as well as by reference to M and M's conduct, and concluded that definiteness requirement was satisfied. *Id.* at 806.

A virtually identical class definition was proposed and approved in numerous other TCPA cases. *See.,e.g.*, *Group C Commnc's, Inc.*, 2010 WL 744262, at *4 (certifying a class where class members could be ascertained by referencing two fax number databases identified by the plaintiff); *G.M. Sign, Inc. v. Finish Thompson, Inc.*, No. 07 C 5953, 2009 WL 2581324, at *7 (N.D. Ill. Aug. 20, 2009) ("[T]his class is ascertainable—the class members can be identified by referencing the fax logs."); *Holtzman v. Turza*, No. 08 C 2014, 2009 WL 3334909, at *6 (Oct. 14, 2009) (similarly relying on fax logs).

In this case, VPR can identify class members by referencing IP addresses much in the same fashion that TCPA plaintiffs referenced fax numbers to ascertain the identity of fax

recipients. By obtaining discovery from Internet Service Providers ("ISPs"), VPR will be able to receive contact information for potential class members or, at the very least, for the households of the putative class members. As the court in *Cy's Crabhouse* noted, identification of the account holders "will take some effort, but it is not impracticable." 259 F.R.D. at 141. In TCPA cases, telephone companies have the records of who owned the fax numbers; here, ISPs know who leased the IP addresses.

In addition to using precise and objective IP addresses to ascertain class membership, VPR's proposed class definition also includes a reference to defendant's conduct that would be within the personal knowledge of each potential class member.

**B.    "Distribution Activity" is a Reference to Defendant's Conduct Within the Personal Knowledge of each Potential Class Member**

VPR's proposed class definition satisfies the definiteness prerequisite because it draws the boundaries of the class by referencing Defendants' conduct: "persons . . . engaged in distribution activity via the BitTorrent file sharing protocol . . . of Plaintiff's copyrighted works . . . ." Discovery from the ISPs sought by VPR will provide Plaintiff with contact information for the account holders associated with IP addresses, who may or may not be the people who actually distributed Plaintiff's videos, and thus may or may not be members of the proposed class. But, a person who downloaded or uploaded videos will, in all but the most exceptional circumstances, be a member of account holder's household. Most importantly, an individual who downloaded a video via BitTorrent knows he engaged in the conduct of downloading a video.

District courts have repeatedly held that "a class is sufficiently definite if its members can be ascertained by reference to objective criteria *and may be defined by reference to defendant's conduct.*" *Mitchem v. Illinois Collection Service, Inc.*, 271 F.R.D. 617, 619 (N.D. Ill. 2011);

8

*Shurland*, 271 F.R.D. at 146; *Hinman*, 545 F. Supp. 2d at 806. Naturally, defining class

membership by referencing an activity does not require a determination on the merits; rather, it

involves a factual inquiry. And courts have held that a class is sufficiently definite even when a

factual inquiry is complex.

For example, one case that required a complicated factual assessment is *G.M. Sign, Inc. v.*

*Franklin Bank, S.S.B.*, No. 06 C 949, 2008 WL 3889950, at *5 (N.D. Ill. Aug. 20, 2008), where

the class was defined as follows:

> [P]ersons or entities who (1) received, on a telephone facsimile machine, a fax
> transmitted on February 23 or March 29, 2005, that advertised mortgage
> refinancing or debt consolidation loan programs and that instructed the recipient
> to "Call the experts for a free analysis" at "1-877-907-SAVE" or "1-877-489-
> 8777" or "1-410-349-4220," (2) owned and/or paid for some portion of the
> operation of the machine on which the fax was received, and (3) had not
> previously consented to receiving such advertisements.

*Id.* at *7. Another example is *Mitchem*, where the court certified the following class:

> All persons called by Illinois Collection Service, Inc., using an automatic
> telephone dialing system with a prerecorded voice message that left a prerecorded
> message in the form received by Plaintiff, where the call was placed to the
> person's cellular telephone number corresponding to the (312) area code from
> November 19, 2005 through December 9, 2009, in an attempt to collect a medical
> debt, and where Illinois Collection Service, Inc.'s records show that it obtained
> the person's cellular telephone number from that person's health care provider.
> Excluded from the class are persons who Defendant's records show that they gave
> consent directly to Defendant to call their cellular telephone number
> corresponding to the (312) area code prior to Defendant first placing a call with its
> automatic telephone dialing system and left a prerecorded voice message in the
> form received by Plaintiff.

271 F.R.D. at 620. The court in the *Franklin Bank* and *Mitchem* cases approved class

certification despite the fact that determining class members required a more complicated factual

assessment than what is called for here. Notably, these and many other TCPA classes were

certified despite the existence of an affirmative defense of consent (*Franklin Bank* and

9

*Mitchem's* definitions explicitly exclude consenting persons; others, like *Hinman*, do not). The courts have held that these class definitions merely set boundaries for the class. *See*, e.g., *Hinman*, 545 F. Supp. 2d at 807. This is exactly what VPR is asking the Court to do here: to set boundaries for the proposed class by referencing IP addresses and Defendants' conduct. As the next section demonstrates, the identity of each individual member does not need to be known for purposes of this proceeding.

**C.     The Identity of Each Individual Class Member Does Not Need to be Known**

The identity of each individual class member does not need to be known, because as discussed below, VPR will not be seeking a determination of ultimate liability and an award of damages against each individual Defendant in this proceeding. Instead, VPR is seeking resolution of issues common to every member of the class. VPR will then pursue individual proceedings against class members during which individual defendants will be able to assert individual defenses, and damages, if any, will be awarded.

Individual class members, however, will still be provided proper notice, even if their identities are not known. Due process does not require perfect notice, it merely requires a notice "reasonably calculated" to reach the person affected by the proceeding. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Rule 23 does not require perfect notice either, but merely "best practicable" notice. Fed. R. Civ. P. 23(c)(2)(B). Notice sent to the account holder's household is both "reasonably calculated to reach" the defendant and "best practicable" under the circumstances. Because the person who downloaded the videos was using the account holder's connection, it is reasonable to infer that they are members of the same household and that the identity of the person most likely to download the videos will be known to the account holder. In such cases, notice is highly likely to reach the putative class member.

In conclusion, class membership is ascertainable by referencing both IP numbers and defendant's conduct within the personal knowledge of each class member, and an identifiable class exists. The identity of each individual member does not need to be known because a notice to the household of the account holder is reasonably calculated to reach the defendant and is best practicable under the circumstances.

## II.      THIS ACTION SATISFIES THE COMMONALITY REQUIREMENT

The commonality requirement is satisfied if the claims or defenses of a proposed class arise from "[a] common nucleus of operative fact," *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), such that the case presents "at least one question of law or fact common to the class." *Arenson v. Whitehall Convalescent and Nursing Home, Inc.*, 164 F.R.D. 659, 663 (N.D. Ill. 1996). The common question must be "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, No. 10-277, slip op. at 9, 564 U.S. ___ (June 20, 2011). A district court in this circuit concluded that when "[t]he questions of fact that will need to be answered as this litigation progresses are the same as to every member of the proposed . . . class," the requirement of commonality is satisfied. *Neil v. Zell*, No. 08 C 6833, 2011 WL 833350, at *3 (N.D. Ill. Mar. 4, 2011).

Here, at least three central questions of law need to be answered as this litigation progresses and they are the same as to every member of the proposed class:

1. Whether monitoring evidence is admissible for the purpose of establishing that Defendants downloaded and uploaded VPR's videos via the BitTorrent protocol;
2. Whether under the Copyright Act VPR possesses exclusive rights in the videos at issue in this case and whether the copyrights were timely and properly registered; and
3. Whether statutory damages are available and how actual damages will be calculated in individual trials.

VPR expects to resolve the question of the admissibility of IP logs gathered by its monitoring software for the purposes of ascertaining class membership before certifying the proposed class.[2] But after the class is certified, the Court will need to answer the first common question: whether monitoring evidence is admissible for the purposes of establishing that Defendants downloaded and uploaded VPR's videos via the BitTorrent protocol so that VPR can assert collateral estoppel in satellite proceedings. This question is exactly the same as to every proposed class member because every proposed class member used the same method of downloading and uploading files and this process was observed using the same monitoring software.

VPR expects the actual class representative to challenge the validity of its ownership rights and timing of its registrations, issues which are applicable to the entire class because each of the Defendants downloaded at least one video. Through the course of discovery, VPR expects to find representative Defendants who downloaded all of the videos at issue here. Without discovery, it is impossible to determine the ratio between IP addresses and downloaders, although it can safely be said that it is not one to one. From Plaintiff's experience, a significant portion of digital pirates are "collectors" (i.e. they do not stop at downloading just one video produced by a particular company, but instead collect as many as possible). But because IP addresses are dynamic and can change at any time, a person can download the first video with one IP address today, and download the second with a different IP address the next day, and

---

[2] The Seventh Circuit has held that the district court must perform a full *Daubert* analysis before certifying a class if the situation warrants, and resolve any challenge to the reliability of information provided by an expert if that information is relevant to establishing any requirement for class certification. *American Honda Motor Co., Inc. v. Allen*, 600 F.3d 813, 815–16 (7th Cir. 2010). Here, VPR obtained the list of the Defendants' IP addresses by using proprietary software to monitor torrent swarm activity.  (Compl. ¶¶ 22, 23.) VPR expects Defendants to challenge the software's accuracy and capabilities, and is prepared to provide software's code and present expert testimony to explain its functionality prior to the motion to certify the class. Therefore, the Court will resolve the issue of whether IP logs are admissible before VPR moves for class certification, and will be able to rely on the IP logs for determining class membership.

simultaneously download a third using a different provider on a different device with a different IP. The three IP addresses thus are associated with one person who collected three different videos. VPR selected a handful of its most popular videos and expects to identify multiple people in the proposed class who downloaded all of the videos or name a small group of people who, together, have downloaded all of the videos. Because the class representative or representatives would have downloaded all of the videos, they will adequately defend the interests of all other class members who may have downloaded a lesser number. Thus, challenges to the validity of VPR's copyright ownership rights will be resolved with respect to the entire class.

Third, VPR seeks to determine whether statutory damages are available and how actual damages will be calculated in individual trials. VPR has the right to elect, at any time before final judgment is rendered, either actual or statutory damages. 17 U.S.C. § 504. But VPR expects the availability of statutory damages to be challenged along with the validity and timing of its copyright registration. The Court can resolve the question of availability of statutory damages with respect to each work at issue after copyright registration questions are answered. In addition, because monetary damages against each Defendant will be awarded in subsequent trials, VPR asks that the method by which the actual damages will be calculated be determined at the class level to ensure fair and uniform application to each class member. In individual trials, VPR can then elect to seek either statutory damages without relitigating issues of copyright registration, or elect actual damages calculated according to the formula determined by this Court.

These questions of law are common to the entire class because every Defendant allegedly engaged in the same conduct—downloading and uploading videos via the BitTorrent protocol—and therefore these questions arise from the same nucleus of operative fact and are the same as to

every member of the proposed class. Next, VPR argues these common questions predominate over individual issues.

## III.    PREDOMINANCE AND SUPERIORITY PREREQUISITES ARE MET

Not only are issues identified in Part II common to the class, but they predominate over individual issues and the class device is a superior device for their resolution.

### A.    Common Issues Predominate Over Individual Defenses

When common questions represent a significant aspect of a case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis. 7AA Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1778 (3d ed.). The common questions need not be dispositive of the entire action; in other words, "predominate" should not be automatically equated with "determinative." *Id.* Therefore, when one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as some affirmative defenses peculiar to some individual class members. *Id.*

This case will hinge on the admissibility of monitoring evidence and the validity of copyrights. These questions are common to the class and can be resolved without adjudicating individual defenses because copyright infringement is determined without regard to the intent or the state of mind of the infringer; "innocent" infringement is infringement nonetheless.

The Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright or right of the author." 17 U.S.C. § 501(a). Copyright holders have several exclusive rights granted to them by the Copyright Act; the two that are relevant in this action are reproduction and distribution rights. 17 U.S.C. § 106; *see also UMG Recordings, Inc. v. Adams*, 08-cv-534, 2008 WL 4516309, at *3 (S.D. Ill. Oct. 3, 2008.)

("If the music is copyrighted, [computer file] swapping, which involves making and transmitting a digital copy of the music, infringes copyright. The swappers . . . are the direct infringers. In particular, such users violate copyright holders' reproduction and distribution rights.") (internal citations and quotation marks omitted).

The Act limits the exclusive rights of copyright holders by declaring that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. The Act enumerates factors to be considered in determining whether the use made of a work in any particular case is a fair use, including the purpose and character of the use and the nature of the copyrighted work. *Id.*

The common questions and individual defenses are not commingled in this case. To prove Defendants have committed copyright infringement, VPR will have to demonstrate that it is the copyright holder of the works at issue and therefore has exclusive rights under the Copyright Act; that downloading and uploading files via BitTorrent protocol constitutes reproduction and distribution; that the Defendants were observed downloading and uploading copyrighted works and therefore violated those rights. VPR does not have to demonstrate that the downloaders knew that their conduct was illegal or that they intended to download these videos; nor does it have to demonstrate reliance or causation. The common defenses that every member of the proposed class can assert are challenges to validity of the copyrights and challenges to admissibility of monitoring evidence, including challenges to underlying data and methods. There are only two plausible individual defenses available to each Defendant: that the Defendant is not a member of the proposed class and the "fair use" defense. Neither defense overlaps with

15

defenses common to the class regarding the copyright validity or evidence admissibility, and each can be properly considered in individual trials.

**B.      Class Action is a Superior Device**

A class action is a superior means of resolving this case because it will achieve economies of time, effort, and expense while promoting uniformity of decisions with respect to those similarly situated. The interests of individual members of the class in controlling pursuit of cases on their own is diminished because the vast majority of Defendants can enjoy anonymity and cost savings by the virtue of being represented in this proceeding by a named class representative. But they also have a choice to intervene in this proceeding voluntarily and become a named party, or opt out of this suit entirely. To the best of Plaintiff's knowledge, there are no other cases already commenced against the members of the proposed class, under the revised definition. Given the geographic diversity of this nationwide class, Illinois represents a convenient central location. Finally, the class is manageable because it involves questions controlled by federal law instead of the laws of multiple states.

It is true that the Seventh Circuit Court of Appeals has warned repeatedly against the certification of unwieldy multi*state* classes, holding that the difficulties inherent in applying the laws of numerous states to the class claims defeat both predominance and manageability. *In re General Motors Corp. Dex-Cool Products Liability Litigation*, 241 F.R.D. at 324 (collecting cases). But this case is devoid of the problems that precluded class certification in those cases. *See, e.g.*, *id.* at 318, 322 (denying a motion to certify a class where claims of the proposed class were governed by the laws of the forty-seven states and would require consideration of individual issues of reliance). Here, every element of VPR's claims and remedies is governed only by federal law, the Federal Rules of Civil Procedure and Evidence, and decisions of federal

16

courts that interpret them, and no individual "state of mind" issues such as reliance or intent exist.

In addition, a class action is superior to individual suits because here, a single plaintiff has the same claim under the same statute against a large number of potential class members, and each claim has potentially only a small recovery. Class actions were designed for this very scenario. *See Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("Rule 23(b) was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate.") As the Seventh Circuit pointed out in a separate case, the "policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). The court went on to emphasize that the "class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Id.*

The reasoning applies with equal force whether the case at bar is a plaintiff or a defendant class action. In this case, potential individual recoveries are small compared, for example, to the cost of litigation, including the cost of expert testimony, that would be necessary in each and every proceeding to resolve the issue of IP logs admissibility alone. Bringing the case as a class action, however, where admissibility is a common question and needs to be resolved only once, provides "just, speedy, and expensive" resolution of Plaintiff's claims.

Even though there will be subsequent individual proceedings, this suit still substantially advances the litigation and promotes judicial economy by resolving common issues in a single proceeding. Subsequent trials on individual issues will be much shorter, less costly to all the

parties, including the Defendants, and will take up far less judicial resources than nearly 3,000 individual trials on repetitive issues would.

Because the predominance and superiority prerequisites of Rule 23(b)(3) are met, as well as Rule 23(a) prerequisites, VPR seeks certification of the class with respect to the common issues.

## IV.    CERTIFICATION OF THE PROPOSED CLASS WITH RESPECT TO COMMON ISSUES ONLY IS APPROPRIATE IN THIS CASE

VPR seeks certification of the class with respect to common issues only. Application of Fed. R. Civ. P. 23(c)(4) is proper in this case because all other requirements for maintaining the class action will be satisfied at the time of the certification motion. VPR does not ask for the Court to apply a more expansive approach to class certification than precedent warrants. On the contrary, it asks the Court to follow the Seventh Circuit's lead.

The Seventh Circuit has signaled that bifurcation of class actions into separate phases by applying Rule 23(c)(4) is appropriate not only between liability and remedies phases of litigation but also between violation and injury phases, where violation can be decided on a class-wide basis and injury requires individual determinations. *Carnegie v. Household Intern., Inc.*, 376 F.3d 656, 661, 663 (7th Cir. 2004) (Posner, J.). In discussing a case brought under the Racketeer Influenced and Corrupt Organizations Act (RICO), the court noted that the question of whether RICO was violated can be separated from the question of whether particular intended victims were injured. *Id.* at 663. Seventh Circuit suggested that the question of RICO violation can "be resolved in a single proceeding with the issue of injury parceled out to satellite proceedings, as is frequently done in class action tort litigation." *Id.* The court cited Rule 23(c)(4) in support of its holding that the prospect of determining "[w]hether particular members of the class were defrauded and if so what their damages were . . . need not defeat class treatment of the question

18

whether the defendants violated RICO." *Id.* at 661. Seventh Circuit affirmed the district court's decision to certify a class to pursue only RICO issues.

The Seventh Circuit also affirmed a district court's decision to certify a class limited to certain core questions in an environmental tort case. *Mejdrech v. Met-Coil Systems Corp.*, 319 F.3d 910 (7th Cir. 2003). The Seventh Circuit held that where "there are genuinely common issues, issues identical across all the claimants, issues moreover the accuracy of the resolution of which is unlikely to be enhanced by repeated proceedings, then it makes good sense, especially when the class is large, to resolve those issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings." *Id.* at 911. The district judge limited class treatment to what he described as "the core questions, i.e., whether or not and to what extent [defendant] caused contamination of the area in question" and reserved for individual hearings determination of whether a particular member suffered any legally compensable harm and if so, in what dollar amount. *Id.* Judge Posner said that "the district judge's determination was reasonable, indeed right." *Id.*

In another environmental pollution case, a court in this circuit relied on *Mejdrech* and applied Rule 23(c)(4) to limit class certification only to questions of whether the defendants polluted excessively and, if so, whether the pollution reached the class members' property. *Leib v. Rex Energy Operating Corp.*, No. 06-cv-802, 2008 WL 5377792, at *11 (S.D. Ill. Dec. 19, 2008). The Court concluded that "[t]he class being so limited, these issues predominate over individualized questions regarding causation and damages, which can be decided in later individualized proceedings." *Id.*

Similarly, in this action, VPR seeks resolution of class-wide common questions, with questions of individual defenses and damages spun off into satellite proceedings. Questions of

admissibility of evidence and the validity of copyrights common to each member of the class can be economically resolved at the class level. Defendants can then argue in subsequent individual proceedings that they are not members of the proposed class, or that in their case, the purpose for which they downloaded Plaintiff's files falls within the "fair use" exception. Resolving these common questions would not require the Court "to create a composite legal standard that is the positive law of no jurisdiction," *Mejdrech*, 319 F.3d at 912, as was the case in *Dex-Cool*. All claims and defenses in this case are grounded in federal law. This is exactly the kind of case in which certification of common issues is not only proper, but encouraged by the Seventh Circuit.

Such subsequent proceedings would not violate the Defendants' Seventh Amendment right to a jury trial because VPR is asking the Court to carve this case at a joint, so the same issue would not have to be reexamined by different juries. For example, the court of appeals held it was not proper to divide the issues in a way where comparative negligence and proximate causation to be decided in subsequent trials would overlap questions of defendants' negligence to be decided in the initial class action. *In re Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1303 (7th Cir. 1995). But here, issues of copyright validity, admissibility of technical evidence, and availability of statutory damages are all questions of law, separate from the issues of determining ultimate liability and awarding damages, which are questions of fact to be decided by juries in individual trials. The Defendants' right to a jury trial is thus preserved.

Certifying a class with respect to the common issues by applying Rule 23(c)(4) is proper in this case because all requirements of Rule 23(a) and (b)(3) are satisfied; bifurcation is encouraged by the Seventh Circuit to achieve economies of time, effort, and expense; and Defendants' Seventh Amendment rights are preserved.

**CONCLUSION**

In this suit, VPR seeks resolution of common class issues so it can later assert collateral estoppel against the class members in subsequent individual trials. This bifurcation is proper because in due course, all of the requirements for class certification will be met with respect to the proposed class.

Respectfully submitted,
VPR Internationale

DATED: July 5, 2011

By:      /s/ John Steele_____
         One of its Attorneys

         John Steele # 6292158
         Steele Hansmeier PLLC
         161 N. Clark St.
         Suite 4700
         Chicago, IL 60601
         312-880-9160;   Fax 312-893-5677
         jlsteele@wefightpiracy.com
         *Lead Counsel*


         **Attorney for Plaintiff**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 5, 2011, all parties of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system.  Notice was sent to the following via first class U.S. mail:

<u>s/ John Steele</u>
JOHN STEELE

## **CERTIFICATE OF COMPLIANCE WITH TYPE VOLUME LIMITATION**

The undersigned hereby certifies that the foregoing document complies with the type volume limitation of Local Rule 7.1(B). On July 5, 2011, the foregoing document was determined to contain 6,782 words and 42,686 characters (with spaces) and therefore to be in compliance with the standard set in Local Rule 7.1(B)(4)(b)(1).

s/ John Steele
JOHN STEELE